## In re BRIANNA K. and Brandon K.

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 21, 1996.

Decided May 7, 1996.

Anthony J. Giunta, Ellsworth, for Appellant.

Ellen S. Best, Blue Hill, Rosemarie Giosia, G.A.L., Ellsworth, for Appellee.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, and DANA, JJ.

WATHEN, Chief Justice.

The father appeals from the entry of the judgment in the Hancock County Probate Court (*Paterson, J.*) terminating his parental rights pursuant to 22 M.R.S.A. § 4055 (1992 & Supp.1995) to his son Brandon K. based on a finding that he abandoned him. His former wife cross-appeals the court's denial of the petition to terminate the father's rights to their daughter Brianna K. Finding no error, we affirm the judgment.

The facts presented at the trial may be summarized as follows. The parents had two children during their marriage. They were divorced in 1992, and the sole custody of the children was granted to the mother. The father had the right to visit with the children "at all reasonable times and places including but not limited to alternate weekends" and was ordered to pay child support.

The parties had been separated for over one year at the time of their divorce. The mother was residing with her current husband for five months before the divorce. During the time of the parties' separation, the father did not attempt to visit Brianna. He did, however, speak to Brianna on the telephone during this time.

Brandon was born during the separation and while the mother was living with the person who became her second husband. She testified that the father came to the hospital on the day Brandon was born and stayed for about fifteen minutes. The next time that he arranged to see Brandon was in March 1992, shortly after the divorce hearing. The visit in 1992 was the last time he saw the children or made any attempts to contact them until the petitions for termination were filed.

From 1992 to 1993 the father's employment took him to Ohio, California, and New York. From October 1993 until the petitions were filed in April 1995 he lived in Portland. In 1992 his annual income was about $40,000, but by 1995 he was unemployed. The father experienced some difficulty in contacting the mother because her telephone number was unlisted. The father's sister had the number, but the mother asked her not to give it to the father. He was nonetheless able to get the number from persons he knew through work. He occasionally called and told the mother that he would like to exercise his visitation rights but could not afford to return to Maine.

In 1993 the mother and her husband told the father that they wished to terminate his rights to both children. The mother testified that the father said he was willing to give up Brandon but not Brianna. He requested visitation with the children at that time, and the mother declined.

The father then discussed visitation with his sister because he knew that she occasionally saw the children as a result of her friendship with the mother. His sister advised him not to go to the mother's home because the children did not know him well and because she feared that the mother would prevent her from seeing the children. In 1994 he again told the mother that he wanted to visit the children. She denied his request because the petitions were pending.

The father testified that after he had moved from Maine his income dropped. He wanted to visit the children but could not afford to do so. He testified that when he returned to Maine in 1993 he failed to seek visitation because he was afraid that the mother's husband, who worked in the sheriff's office, would have him arrested and because he could not afford an attorney to enforce his visitation rights. He admitted that he has never sent birthday or Christmas gifts to the children, but testified that he had sent a few cards when he left Maine.

The Probate Court assessed the above facts as follows:

> I am satisfied that the petitioners have proved, by clear and convincing evidence, that [the father] has intended to voluntarily relinquish all parental rights to his son, Brandon, perhaps because he has seen him only twice. While there seems to have been great interest shown in both children by [his sister], [the father] cannot adopt her relationship with Brandon as evidence of his interest, and I find that he has abandoned his son.

Although [the father] has consistently avoided his parental duties to his daughter, Brianna, I am not satisfied, by clear and convincing evidence, that [his] conduct has proved his settled intention to relinquish all of his parental rights to her. [His] failure to visit Brianna for three years might be sufficient to establish that he has been unable or unwilling to take responsibility for her, but his statements of desire to visit show that he intended to preserve some relationship.

I am further satisfied by clear and convincing evidence that, because of his attachment to [his stepfather], his young age, and his lack of contact with [his father], the termination of [his father's] parental rights is in Brandon's best interest.

From this ruling, the parties now appeal.

■ We conclude that the court's decision to deny the petition to terminate rights as to Brianna was not clearly erroneous. The mother and her husband were required to prove, by clear and convincing evidence, facts that demonstrated that Brianna had been abandoned.[1] Because they had the burden of proof, they are required to demonstrate on this appeal that the evidence compelled a finding that Brianna had been abandoned. *See In re Krystal S.*, 584 A.2d 672, 673 (Me.1991) (citing *Luce v. Hoefler*, 464 A.2d 213, 215 (Me.1983)).

■ The court found credible the father's statements that he wished to preserve a relationship with Brianna. Although his contact with Brianna was minimal, he did speak to her at least a few times on the telephone and expressed an interest in seeing her. A "mere flicker of interest" is not sufficient to bar a finding of abandonment. *In re Shannon R.*, 461 A.2d 707, 714 (Me. 1983) (citing *In re Diana P.*, 120 N.H. 791,

424 A.2d 178, 183 (1980)). Here, however, the court had the opportunity to evaluate the testimony of the witnesses and determined that his interest was more than a "mere flicker." The court's decision is entitled to substantial deference and accordingly we decline to vacate the judgment. *In re Misty Lee H.*, 529 A.2d 331, 333 (Me.1987).

■ Next we consider whether the trial court rationally could have found clear and convincing evidence to support the factual findings that justify terminating the father's rights to Brandon. *In re Serena C.*, 650 A.2d 1343, 1344 (Me.1994). When clear and convincing evidence is required, the appropriate standard of appellate review is whether the factfinder could reasonably have been persuaded that the required factual findings were proved to be highly probable. *Id.*

■ Although the father testified that he wished to see his children, he has seen Brandon only two times since he was born and he has never provided care or support for him. Moreover he was willing to relinquish his rights to his son, and at the trial attempted to withdraw his statement of abandonment. Although he spoke to Brianna on the phone and occasionally asked about her, he made no such inquiries as to Brandon. Our review of the record fails to persuade us that the trial court clearly erred in concluding that the father had abandoned Brandon.

The entry is:

Judgment affirmed.

All concurring.

---

1. 22 M.R.S.A. § 4002 (1992) provides:

"Abandonment" means any conduct on the part of the parent showing an intent to forego parental duties or relinquish parental claims. The intent may be evidenced by:

  A. Failure, for a period of at least one year, to communicate meaningfully with the child;

  B. Failure, for a period of at least one year, to maintain regular visitation with the child;

  C. Failure to participate in any plan or program designed to reunite the parent with the child;

  D. Deserting the child without affording means of identifying the child and his parent or custodian;

  E. Failure to respond to notice of child protective proceedings; or

  F. Any other conduct indicating an intent to forego parental duties or relinquish parental claims.