2001 ME 79

**In re KAYLA S.**

Supreme Judicial Court of Maine.

Submitted on briefs Jan. 11, 2001.

Decided May 11, 2001.

James S. Hewes, Esq., Portland, for appellant.

G. Steven Rowe, Attorney General, Mathew Pollack, Asst. Attorney General, Sally DeMartini, Asst. Attorney General, Augusta, for appellee.

Barbara Lundgren, Esq., Portland, Guardian ad Litem.

Judith Wohl, Esq., Portland, for father.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] The mother of Kayla S. appeals from a judgment entered in the District Court (Portland, *Goranites, J.*) terminating her parental rights. The mother also appeals that part of the judgment ordering the Department of Human Services to cease its efforts to provide reunification services to the mother. The mother contends that the court (1) denied her equal protection of the law when it quashed a subpoena for her daughter to testify at the hearing; (2) impermissibly allowed in evidence a statement contained in her medical records and witness testimony about her character and reputation; and (3) erred when it applied a recent amendment to the Child Protection Act. She also contends that the evidence was insufficient to support the court's findings. We are unpersuaded by the mother's contentions and affirm the judgment.

[¶ 2] The Department first became involved with Kayla in August of 1997, when the court issued a preliminary child protection order giving custody of four-and-a-half year old Kayla to the Department. Kayla was returned to her mother subject to several conditions including supervision of the mother in her home by the Department, and the mother's obligation to maintain stable housing, to continue individual counseling, and to attend parenting education. In August of 1998, the court again removed Kayla from her mother's custody, at the mother's request, and placed her in foster care. The court ordered the mother to continue individual counseling and to maintain sobriety. In August of 1999, following a judicial review and a hearing on a permanency plan, the court directed the mother to obtain stable housing and employment. In March of 2000, the court granted the Department's motion to delay its obligation to provide in-home visits as a result of a recent assessment of Kayla during play therapy.

[¶ 3] The mother continued to experience substance and alcohol abuse problems and involvement with domestic violence. She also struggled to maintain a stable living arrangement. The Department filed a motion to cease reunification services and a petition to terminate parental rights to Kayla pursuant to 22 M.R.S.A. §§ 4050–4058 (1992 & Supp.2000).

[¶ 4] Prior to the hearing on the Department's motion and petition, the mother filed a subpoena with the Department to require the attendance and testimony of Kayla. At the termination hearing, the court granted the Department's motion to quash the subpoena for Kayla. The mother also objected to the admission in evidence of medical records from a health center that included an entry describing her as having "drug-seeking behavior and dishonesty." The court overruled the ob-

jection and relied on the entry in its findings. The court also overruled the mother's objection to the Department's inquiry to a psychologist about the mother's admission that she lies. Following the hearing, the court terminated the mother's parental rights to Kayla and her brother and relieved the Department of any obligation to continue reunification efforts.

[¶ 5] The mother appeals the order terminating her parental rights to Kayla but does not challenge the court action terminating her parental rights to her son. The mother also appeals the court's order relieving the Department from its obligation to provide services to her.

## I.

[¶ 6] The mother challenges the court's order to quash her subpoena of Kayla. In quashing the subpoena that would require Kayla to testify, the court noted that the mother had not tendered the requisite fees for Kayla's attendance and mileage. *See* M.R. Civ. P. 45(b)(1);[1] *see also* 16 M.R.S.A. §§ 251, 253 (1983 & Supp.2000). The mother contends that she was not afforded equal protection of the law because she was unable to tender the fee.

[¶ 7] The mother's contention has merit to the extent that the court's decision to quash the subpoena was based solely on the failure to tender the fee. *Cf. State v. Curtis*, 399 A.2d 1330, 1331 (Me. 1979) (finding indigent defendant entitled to transcript at public expense). The refusal of the court to sanction the compelled appearance of Kayla, however, does not mandate that the termination order be vacated. Section 4007 of the Child Protection Act is designed to reduce the necessity of putting a child through the experience of testifying in a child protection proceeding. In order to do so, it abrogates the hearsay rule as it applies to out-of-court statements made by children.[2] *See* 22 M.R.S.A. § 4007(2) (1992); *In re Morris D.*, 2000 ME 122, ¶ 7, 754 A.2d 993, 996. When the court, in its discretion, determines that the child may be called as a witness, the testimony of the child may be produced in an alternative manner that does not require the child to appear before the court.[3] *Morris D.*, 2000 ME 122, ¶ 7, 754 A.2d at 996.

[¶ 8] While the State's interest to guarantee that the fee for attendance and travel be paid may not be sufficient alone to justify the quashing of the subpoena, any harm suffered by the mother as a result of the subpoena being quashed is minimal in

1. The rule states that service of a subpoena should be made, "if the person's attendance is commanded, by tendering to that person the fees for one day's attendance and the mileage allowed by law." M.R. Civ. P. 45(b)(1).

2. The rule governing the conduct of child protective proceedings provides: "The court may interview a child witness in chambers ... and may admit and consider oral or written evidence of out-of-court statements made by the child, and may rely on that evidence to the extent of its probative value." 22 M.R.S.A. § 4007(2) (1992).

3. In a child protection proceeding, the far better practice for determining whether a

child will be required to testify, rather than the issuance of a subpoena or the filing of a motion to quash a subpoena, is the use of a motion *in limine*. *See Gendron v. Pawtucket Mut. Ins. Co.*, 409 A.2d 656, 659, 660 (Me. 1979) (noting motion *in limine* utilized in many ways to protect party's right·to fair trial). Such a motion allows the court to decide, based on sufficient information, what the testimony may be and to determine its relevance, most often without requiring the presence of the child. *See id.* at 660. If the child is in the custody of the Department, the Department should make the child available to testify if the court deems that testimony to be appropriate.

the circumstances of this case. The mother has not identified any testimony that Kayla could have offered that would have affected the outcome of the case, and section 4007 provides for the admissibility of a child's statement made outside of the court court without the necessity of forcing the child to testify in the stressful environment of a contested hearing. Accordingly, any error in the court's quashing of the subpoena was harmless. Moreover, the decision of the court to terminate the mother's parental rights was based on substantial objective evidence concerning the mother's inability to parent, and any in-court testimony by Kayla would have had little effect on the court's ultimate determination to terminate the mother's parental rights.

## II.

[¶ 9] The mother also contends that the court erred in admitting the testimony of a psychologist which suggested that the mother had a propensity to lie. We review a trial court's evidentiary rulings for clear error and an abuse of discretion. *State v. Kelly*, 2000 ME 107, ¶ 22, 752 A.2d 188, 193. Character evidence is not admissible for the purpose of proving that the accused acted in conformity with the trait on the particular occasion involved at trial, but such character evidence may be used in some circumstances. *See* M.R. Evid. 404(a), 405(b); *State v. Bourgeois*, 639 A.2d 634, 637 (Me.1994); *State v. Wells*, 423 A.2d 221, 223–24 (Me.1980).

[¶ 10] In this case, the mother's propensity to lie is critical to a determination of whether she is able to properly care for her children, and additionally, it is important to accurately assess the mother's affirmations to the Department about her intent to work harder to rehabilitate herself and reunify with her children. Moreover, the testimony was relevant to the psychologist's testimony as to the likelihood of the mother's cooperation with the Department. Its admission here was neither clear error nor an abuse of the court's discretion.

## III.

[¶ 11] The mother also challenges the court's admission of "unredacted" medical records that described the mother as displaying certain "narcotic seeking" behavior. Our review of the record discloses that the error if any in admitting that medical record is harmless. *See In re Elijah R.*, 620 A.2d 282, 285–86 (Me. 1993). There is ample evidence in the record supporting the findings made by the court that the mother has inadequately addressed her substance abuse problems. *Id.* The court relied on evidence including testimony from the mother's drug counselor and other medical information in reaching its conclusion that she has not addressed her substance abuse issues adequately and consistently. Further, the record also fails to show any request by the mother to redact that portion of the record, nor does it reflect any challenge to the authenticity of the record.

## IV.

[¶ 12] In challenging that part of the judgment relieving the Department from providing reunification services, the mother contends that the court erred in its conclusion that the Department made reasonable efforts to develop a reunification plan. We review the factual findings that lead to a cease reunification order for clear error. *Macdougall v. Dep't of Human Serv.*, 2000 ME 64, ¶ 6, 769 A.2d 829 (affirming Court practice to overturn disputed findings of fact only if clearly erroneous). The Department must demonstrate by a preponderance of the evidence that it made a good faith effort to rehabilitate the parent and reunify her with her children.

22 M.R.S.A. § 4041(1)(A) (Supp.2000); *In re Ashley S.*, 2000 ME 212, ¶ 22, 762 A.2d 941; *In re Breauna N.*, 1999 ME 191, ¶ 21, 742 A.2d 911, 916. The court's determination to cease reunification is reviewed for an abuse of discretion. *See Ashley S.*, 2000 ME 212 ¶ 22 n. 11, 762 A.2d 941, 949 n. 11.

[¶ 13] Here, the court found that, although the Department made a good faith effort to establish and implement a reunification program, the mother did not comply in good faith with her obligations. The facts clearly show that the Department provided reunification and rehabilitation services, in which the mother participated but later discontinued. Even if there is some merit in the mother's assertions that the Department caseworkers hindered reunification, the mother continued to abuse drugs, remained in contact with an individual with whom the court ordered her to have no contact, failed to follow through with reunification efforts with in-home counselors, and continued her inconsistent conduct. The court acted within its discretion in determining that the Department should be relieved of any further responsibility to assist the mother in rehabilitating and reunifying with Kayla.

[¶ 14] The mother's contentions that there was insufficient evidence to support the termination of her parental rights, and that the court incorrectly applied an amended version of 22 M.R.S.A. § 4052(2–A) (Supp.2000), are without substantial merit.

The entry is:

Judgment affirmed.